317 S.E.2d 516

Randall M. BROCKMAN

v.

Deborah Brockman HEGNER.

No. 16109.

Supreme Court of Appeals of West Virginia.

June 14, 1984.

James M. Cagle, Charleston, for appellant.

Penelope Crandall, Charleston, for appellee.

NEELY, Justice:

This case requires this court to consider the application of the Uniform Child Custody Jurisdiction Act, *W.Va.Code,* 48–10–1 *et*

*seq.* [1981]. The petitioner, Randall Brockman, a resident of Kanawha County, West Virginia, asks this court to determine whether the Kanawha County Circuit Court is the proper forum for the adjudication of a custody dispute regarding his eight-year-old son, Jeremy. The respondent, Deborah Brockman Hegner, is Jeremy's mother and a resident of Wisconsin. She argues that Appleton in Outagamie County, Wisconsin is the appropriate forum for the custody determination.

In an order dated 8 November 1983, Judge Margaret Workman of the Kanawha County Circuit Court denied jurisdiction over Mr. Brockman's petition for custody. Our reading of the Uniform Child Custody Jurisdiction Act confirms that judgment as a proper exercise of discretion and therefore we affirm the ruling of the circuit court.

## I

Mr. Brockman and Mrs. Hegner were divorced on 22 June 1977 by a decree entered in Dane County, Wisconsin Family Court. The decree granted custody of Jeremy to his mother. Nevertheless, the parents agreed to take turns having physical custody and control of their son. Since June of 1979, Jeremy has lived with his father except for visits to his mother during school vacations and on holidays.

At the time of the divorce Mr. Brockman was a student in the School of Engineering at the University of Wisconsin. Upon graduation he accepted a job with Union Carbide Corporation in Charleston. At that time Mr. Brockman and Mrs. Hegner agreed that Jeremy would move with his father to Charleston. The parents agreed that Jeremy would live with each of them for two years on a rotating basis. When the first two years had elapsed, however, Jeremy remained with his father in Charleston and his mother took no action to have her son returned to her.

On 24 May 1983, Mr. Brockman filed a petition for a modification of the custody decree in the Circuit Court of Kanawha County. On 14 July 1983, Mrs. Hegner filed a motion to dismiss in the Kanawha County Circuit Court on the grounds that that court lacked jurisdiction. On 19 July 1983, Mrs. Hegner charged Mr. Brockman with contempt in an action brought before Judge William Eich in Madison, Wisconsin. Mr. Brockman appeared specially by counsel in that action and moved to dismiss, again on the grounds that Wisconsin lacked both subject matter and personal jurisdiction and because the case was already pending in Kanawha County.

On 20 July 1983, Judge Eich sent a letter to Judge Workman indicating that it was his tentative opinion that West Virginia was the proper forum for the adjudication of the custody issue. Upon receipt of that letter, Judge Workman called Judge Eich by telephone and discussed the relative merits of the two forums once again. On 26 July 1983, Judge Workman held a hearing on the jurisdictional issue. On 8 November 1983, she issued her final order dismissing the petition on the grounds that the court lacked jurisdiction. It is that order which is the subject of this appeal.

## II

One of the explicit purposes of the Uniform Child Custody Jurisdiction Act is to, "Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effect on their well being." *W.Va.Code* 48–10–1 [1981]. The efforts of both the Kanawha County Circuit Court and its counterpart in Wisconsin were exemplary in this regard.

Both judges evinced an intelligent concern that the case be adjudicated in the forum most likely to reach the proper result and exhibited no territorial jealousy. *W.Va.Code* 48–10–6(c) [1981] provides that in cases where two courts are asked to make rulings upon child custody, they should consult before determining where jurisdiction will lie. Both Judge Eich's letter to Judge Workman and Judge Workman's telephone call to Judge Eich demonstrate a faithful adherence to this procedure.

Furthermore, we find that Judge Workman was acting within her discretion in refusing jurisdiction of the child custody issue. Judge Workman's memorandum opinion relied on *W.Va.Code* 48–10–8(b) [1981], which states in its entirety:

Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without the consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.

The petitioner has retained physical custody of Jeremy beyond the agreed period of two years and petitioner's request to the Kanawha County Circuit Court for a modification can be viewed as an improper effort to transform respondent's temporary relinquishment of physical custody into a permanent loss of legal custody. We do not suggest that the facts of this case fit neatly into the prototypical child-snatching formula. From all indications, petitioner is a concerned parent who honestly believes that the best interests of the child are served by his retaining permanent custody rather than continuing the practice of moving the child back and forth between parents. Nevertheless, the question before this Court is not what is in the best interest of the child, but rather what forum is best able to make that determination.

The Wisconsin courts have faithfully adhered to the statutory guidelines. All of the child's extended family resides in Wisconsin. Whether the home the child's mother can provide is a suitable one is an issue best determined by a Wisconsin court since that is where she currently resides. Under *W.Va.Code* 48–10–14 [1981][1] West Virginia will recognize and enforce the custody agreements of other states if those agreements are in substantial compliance with the statutory guidelines set out in the Uniform Act. Since that was the case with the initial decree in this case, and since Wisconsin evinces a willingness to consider petitioner's motion for modification, we can find no reason for usurping jurisdiction. If we allow a parent to move to this State with temporary physical custody of a child and then seek modification in a West Virginia court, the inevitable result would be the sort of forum shopping the Act is designed to avoid.

We emphasize that we offer no opinion concerning whether the best interests of the child would be served by modifying the custody decree. We state only that under the statutory guidelines that determination should be made in Wisconsin.

Therefore, for the reasons given above, we affirm the ruling of the Kanawha County Circuit Court.

Affirmed.

1. *W.Va.Code* 48–10–14 [1981] provides in its entirety:
"The courts of this State shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances meeting the jurisdictional standards of this article, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this article."